FILED
2021 Oct-19  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **NYESHA SWOPE,** ) | **Case No.:** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Jury Trial Demanded** |
| ) | |
| **EPISCOPAL FOUNDATION OF** ) | |
| **JEFFERSON COUNTY d/b/a ST.** ) | |
| **MARTIN IN THE PINES** ) | |
| | |
| **Defendant.** | |

## COLLECTIVE ACTION COMPLAINT

## INTRODUCTION

NOW INTO COURT through undersigned counsel comes Plaintiff, NYESHA SWOPES, and files this Complaint against Defendant, EPISCOPAL FOUNDATION OF JEFFERSON COUNTY d/b/a ST. MARTIN IN THE PINES, ("Defendant"), who asserts claims on behalf of herself and all others similarly situated, seeking overtime and liquidated damages owed to them for not being paid overtime as mandated by the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*., (he "FLSA"). In addition, Plaintiff asserts an individual claim for retaliatory termination in violation of the Family Medical Leave Act ("FMLA").

## JURISDICTION

1. Jurisdiction in this Court is proper as the collective action claims are brought pursuant to the Fair Labor Standards Act to recover unpaid overtime wages, liquidated damages and reasonable attorney's fees and costs and Plaintiff's individual claim is being brought pursuant to the Family Medical Leave Act. Thus, jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1331.

## VENUE

2. Venue is proper in the Northern District of Alabama under 28 U.S.C. § 1391 because it is where Defendant is subject to personal jurisdiction, where Defendant does business in the State of Alabama, and where the unlawful acts complained of occurred.

## PARTIES

3. At all times material hereto, Plaintiff worked at St. Martin in the Pines, which is owned and operated by Defendant Episcopal Foundation of Jefferson County, in Birmingham, Alabama.

4. At all times material hereto Defendant was, and continues to be, an Alabama nonprofit corporation. Further, at all times material hereto, this Defendant was, and continues to be, engaged in business in Jefferson County, Alabama.

## PLAINTIFF IS SUBJECT TO THE PROVISIONS OF THE FLSA

5. At all times material hereto, Defendant was engaged in whole or in part in the "operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution" and therefore Plaintiff and the FLSA Collective Action Plaintiffs are covered under the FLSA pursuant to 29 U.S.C. 203(r)(2)(A) and (s)(1)(B).

6. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of FLSA.

7. At all times material hereto, Defendant was the Plaintiff's "employer" within the meaning of FLSA.

8. At all times material hereto, Defendant was an "enterprise engaged in commerce" within the meaning of FLSA.

9. Based upon information and belief, the annual gross revenue of Defendant was in excess of $500,000.00 per annum during the relevant time periods in income.

10. Defendant operated in substantial competition with for-profit businesses in the same or similar fields.

11. At all times material hereto, the work performed by the Plaintiff was directly essential to the business performed by Defendant.

## FACTUAL ALLEGATIONS

12. All previous paragraphs are incorporated by reference herein.

13. In May 2020, Plaintiff began working for Defendant as a Certified Nursing Assistant ("CNA") at St. Martin in the Pines in Birmingham, Alabama.

14. St. Martin in the Pines is a nursing home and houses residents who are unable to care for themselves due to illness, mental capacity or for other reasons.

15. Her rate of pay was $11.40.

16. In July 2020, Defendant implemented a policy whereby it agreed to pay employees who worked in the "COVID Ward" – a reference to residents who were sick with the coronavirus – an additional $5.00 per hour.

17. Plaintiff agreed to work in the COVID Ward and often worked 60-65 hours per week with these residents (in addition to working other shifts with residents who did not have COVID).

18. In this manner, Plaintiff worked in excess of 40 hours for Defendant and many of those hours were worked at the COVID Ward rate of pay, which was at a rate of $16.40 per hour.

19. Under the FLSA, when an employee works at two different rates of pay, for the purposes of overtime, the employer must either average the rates of pay, weighted for the amount of time the employee spends in each role or

pay the employee overtime at the rate of pay for the position the employee is working when he or she actually works overtime hours. The employer may not, as a policy, simply pay the employee overtime at a rate based upon the lowest rate of pay received by the employee.

20. In addition, the Department of Labor has held that hazard pay – which is what Defendant's COVID pay increase was – must be included when calculating overtime pay.

21. However, regardless of whether Plaintiff was working in the COVID Ward when she worked overtime for Defendant, Defendant paid all of her overtime hours at an overtime rate based upon her lower $11.40 rate of pay.

22. In addition, although Defendant required Plaintiff to clock out for breaks, she was not fully relieved of duty during these breaks and, even when she had to work during her breaks, she was not paid for them.

23. In doing so, Defendant failed to pay Plaintiff all overtime pay which she is owed under the FLSA.

24. Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

25. Therefore, Defendant is a covered employer under the FMLA.

26. Plaintiff worked 1250 hours for Defendant during the 12 months prior to needing leave to care for her mother after a kidney transplant.

27. Plaintiff worked at a location with more than 50 other employees located within 75 miles.

28. Accordingly, Plaintiff is a covered employee under the FMLA.

29. From May 2020 to August 2021, Plaintiff worked full time for Defendant without incident.

30. Plaintiff did not use more than 12 weeks of leave under the FMLA during this time.

31. Throughout her employment with Defendant, Plaintiff performed her duties in an exemplary fashion. Plaintiff was considered an exceptional employee and had no significant history of performance, attendance, or disciplinary issues.

32. In August 2021, Plaintiff's mother was scheduled to undergo a kidney transplant.

33. Because she needed to reduce her work hours to care for her mother, Plaintiff gave Defendant the requisite two-week notice that she needed to be put on "PNR", meaning that she would be on call.

34. Defendant's policy for CNAs needing to take PNR status was that they needed to provide a written notice two weeks prior to the effective date of electing PNR status, a policy with which Plaintiff complied.

35. However, rather than place her on PNR status, Defendant told Plaintiff that it would take her off the schedule due to her "resignation."

36. Plaintiff immediately advised Defendant that she was not "resigning" but rather taking PNR status to care for her mother during her recovery time.

37. Defendant then advised Plaintiff that she could have used FMLA leave and not gone on PNR status to care for her mother after her operation, but, when Plaintiff asked to take that leave, Defendant told her that it was too late because she had "resigned" by complying with its policy to go on PNR status.

38. At no point did Plaintiff resign or quit her job.  Instead, Defendant, who acknowledged that Plaintiff had FMLA leave and was eligible to take it, terminated her in lieu of allowing her to take leave under the FMLA.

## COLLECTIVE ACTION ALLEGATIONS

39. All previous paragraphs are incorporated as though fully set forth herein.

40. Plaintiff brings this FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons in the State of Alabama who worked for Defendant, who were promised COVID Ward pay at a rate

higher than their general rate of pay, who worked overtime in the COVID Ward for Defendant during weeks when they worked in excess of 40 per week, but who were only paid overtime at a rate based upon their lower rate of pay, without regard for whether they only worked overtime in the lower rate of pay position, in direct violation of the FLSA.

41. In this manner, Defendant failed to pay the Plaintiff and the FLSA Plaintiffs all overtime pay to which they were, and are, entitled to be paid under the FLSA.

42. Plaintiff brings this action as a collective action under the FLSA to recover unpaid overtime, an equal amount as liquidated damages, attorneys' fees and costs, and all other damages owed to Plaintiff and all similarly situated employees of Defendant due to Defendant's failure to accurately record the hours that they worked and failure to pay them overtime for all hours that they worked in excess of 40 per week.

43. Plaintiff estimates that there are dozens, if not hundreds, of members of the FLSA Collective Class who have been affected by Defendant's improper policies and practices, based upon the number of current employees of Defendant, the number of work locations maintained by Defendant, the Defendant's treatment of all of its employees in the same manner, and the turnover rate of Defendant's employees in the last three

years.  It would be impractical to join all of those employees and former employees in this action.

44. The precise number of persons in the FLSA Collective Action Class can be easily identified and located using Defendant's payroll and other personnel records.

45. Given the composition and size of the FLSA Collective Class, potential opt-in class members may be informed of the pendency of this Collective Action by direct mail, text message and email.

46. Plaintiff's claim for unpaid overtime wages is properly maintained as a collective action because Plaintiff is similarly situated to the collective action members she seeks to represent via the Class in that:

    (a)   Plaintiff and similarly situated employees worked for Defendant as hourly employees and were subject to the same job scheduling policies and payment practices (although they may have been paid a different hourly rate).

    (b)   Plaintiff is personally aware that Defendant had a policy whereby it only paid employees overtime at a rate of pay based upon their lowest rate of pay, without regard for whether they were actually working in that capacity for each and every overtime hour that they worked.

(c)   Plaintiff is personally aware that other similarly situated employees of Defendant routinely worked in excess of 40 hours per week but were not paid all overtime owed for all hours worked in excess of 40 hours per week due to Defendant's unlawful policy of basing their overtime rate on their lowest rate of pay.

(d)   Although the number of hours worked by Plaintiff and FLSA Collective Plaintiffs may differ, the payment scheme described above was applied to all hourly employees who worked for Defendant in different wards at differing rates of pay and who worked overtime. The hours each employee worked should be readily determinable by review of Defendant's records and via the Plaintiff and FLSA Collective Action Plaintiffs' best recollection where or if Defendant's records are incomplete, incorrect or otherwise inadequate.

(e)   Accordingly, Plaintiff is in the best position to represent all members of the FLSA collective class as a whole.

47. In addition, because Defendant applied its unlawful employment and payment policies in the same manner to all potential members of the FLSA Collective Class, common issues of law and fact predominate, and

therefore pursuing this matter as a collective action serves as the most expeditious use of the court's time and resources, as well as avoiding multiple actions on these issues, with the potential for differing or inconsistent judgments.

48. Plaintiff requests that the Court authorize notice to the FLSA Collective Class to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid overtime compensation and liquidated damages under the FLSA

## COLLECTIVE ACTION CAUSES OF ACTION

## COUNT I: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 201 *ET. SEQ.*

49. All previous paragraphs are incorporated as though fully set forth herein.

50. As a result of Defendant's automatic basing of each employee's overtime rate of pay on their lowest pay rate, without regard for whether all overtime hours were worked in the position with the lowest pay rate, Plaintiff and the FLSA Collective Action Plaintiffs were not paid at the federally-mandated overtime rate for each and every hour that they worked in excess of 40 hours per week.

51. Plaintiff and the FLSA Collective Action Plaintiffs were, and are, entitled to be paid at the statutory rate of one and one-half times their regular rates of pay for all hours they worked in excess of 40 hours.

52. At all times material hereto, Defendant failed to comply with Title 29 and United States Department of Labor Regulations, 29 C.F.R. §§516.2 and 516.4, by implementing a management policy, plan or decision that intentionally provided for the compensation of Plaintiffs as if they were exempt from coverage under 29 U.S.C. §§201 through 219, disregarding the fact that they were not exempt.

53. At all times material hereto, Defendant has failed to maintain proper time records as mandated by the FLSA.

54. Defendant's actions were willful and/or showed reckless disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the FLSA Collective Action Plaintiffs at the statutory rate of one and one-half times their regular rate of pay for all of the hours they worked in excess of 40 hours per week when they knew, or should have known, such was and is due.

55. Defendant has failed to properly disclose or apprise Plaintiff and the FLSA Collective Action Plaintiffs of their rights under the FLSA.

56. Due to the intentional, willful, and unlawful acts of Defendant, Plaintiff and the FLSA Collective Action Plaintiffs have suffered lost minimum wage and lost compensation for time worked over 40 hours per week, plus liquidated damages.

57. Plaintiff and the FLSA Collective Action Plaintiffs are also entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

## ATTORNEY'S FEES

58. Plaintiff has retained the law firm of Jackson+Jackson to represent Plaintiff and the FLSA Collective Action Plaintiffs in this litigation and have agreed to pay the firm a reasonable fee for its services.

## CONSENT

59. Plaintiff's consent to file this Complaint is evidenced by her signature on the FLSA Consent Form that is attached hereto as Exhibit "A."

## JURY DEMAND

60. Plaintiff requests a jury trial on all claims so triable.

## INDIVIDUAL CAUSE OF ACTION

## COUNT II: VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

61. All previous paragraphs are incorporated as though fully set forth herein.

62. Plaintiff asserts that Defendant violated the FMLA by interfering with her exercise of her rights under that Act.

63. Defendant was a covered employer and Plaintiff was a covered employee under the FMLA.

64. As such, Plaintiff was entitled to the protections afforded employees under the FMLA, including the right to be advised of her rights under the FMLA and the right to take leave as set forth in the FMLA.

65. Defendant failed to allow Plaintiff to take the leave to which she was entitled to take under the FMLA.

66. Instead, Defendant terminated Plaintiff rather than allow her to take the FMLA it acknowledged she was entitled to take.

67. As a direct and proximate cause of Defendant's willful, wanton, and malicious failure to allow her to exercise her rights under the FMLA, Plaintiff has sustained damages for the loss of her employment, as well as the security and peace of mind it provided her. Plaintiff has incurred additional damages including lost wages, pain and suffering, mental anguish, and other damages connected with the loss of her job.

68. Thus, Plaintiff is entitled to compensatory damages, lost wages, benefits, reinstatement, attorney's fees, and court costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered in her and the FLSA Collective Action Plaintiffs' favor and against Defendant on the collective action claims and in her favor on the individual claims as follows:

a. Declaring that Defendant's actions of failing to pay to Plaintiff and the FLSA Collective Action Plaintiffs time and one-half their proper rate of pay for of all of the hours they worked in excess of 40 per week is in violation of the FLSA;

b. Awarding Plaintiff and the FLSA Collective Action Plaintiffs an amount equal to their unpaid overtime wages, plus an equal amount as liquidated damages;

c. Issue a declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violated provisions of the Family Medical Leave Act of 1993;

d. Enter judgment against Defendant that Plaintiff recovers compensatory damages;

e. Order the Defendant to make whole the Plaintiff by providing appropriate back pay and other benefits wrongly denied in an amount to be shown at trial and other affirmative relief;

f. Awarding reasonable attorneys fees and costs;

g. Interest from the date of demand; and

h. All other relief to which Plaintiff and/or the FLSA Collective Action Plaintiffs may be entitled.

Respectfully Submitted,

/s/ Jody Forester Jackson
Jody Forester Jackson ASB-1988-O77J
Attorney for Plaintiff Nyesha Swope

OF COUNSEL:

Jody Forester Jackson, ASB-1988-077J
JACKSON+JACKSON
2100 Southbridge Parkway
Suite 650
Birmingham, Alabama 35209
T: (205) 414-7467
F: (888) 988-6499
E: jjackson@jackson-law.net

**PLEASE SERVE:**

Episcopal Foundation of Jefferson County
Through its registered agent:
Zachery Jacobsen
4941 Montevallo Road
Birmingham, AL 35210